# In the United States Court of Federal Claims

No. 11-483
Filed: February 28, 2013
**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| | \* 10 U.S.C. § 620 (Active-duty lists); |
| | \* 10 U.S.C. § 641 (exceptions to Active- |
| | \*   duty lists); |
| | \* 10 U.S.C. § 10211 (Reserve officer |
| | \*   participation in preparation and |
| | \*   administration); |
| | \* 10 U.S.C. § 14002(a) (Reserve active- |
| | \*   status lists); |
| | \* Failure To State A Claim, RCFC 12(b)(6); |
| | \* Judgment On The Administrative Record, |
| | \*   RCFC 52.1; |
| | \* Justiciability; |
| CHRISTOPHER W. CALDBECK, | \* MILPERSMAN 1001 (FTS Reserve |
| | \*   Officers); |
| Plaintiff, | \* Military Pay Act, 37 U.S.C. § 204 (2000); |
| | \* OPNAVINST 1427.1 (Regulations |
| v. | \*   Governing Running Mates, |
| | \*   Precedence, and Competitive |
| THE UNITED STATES, | \*   Categories for Officers of the Navy |
| | \*   Reserve); |
| Defendant. | \* SECNAVINST 1400.1B (Officer |
| | \*   Competitive Categories for the Active |
| | \*   Duty List of the Navy and Marine |
| | \*   Corps); |
| | \* SECNAVINST 1420.1B (Promotion, |
| | \*   Special Selection, Selective Early |
| | \*   Retirement, And Selective Early |
| | \*   Removal Boards For Commissioned |
| | \*   Officers Of The Navy And Marine |
| | \*   Corps); |
| | \* SECNAVINST 1920.6C (Administrative |
| | \*   Separation Of Officers); |
| | \* Tucker Act, 28 U.S.C. § 1491 (2006). |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**John B. Wells,** Law Office of John B. Wells, Slidell, Louisiana, Counsel for Plaintiff.

**Sheryl Lynn Floyd,** United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**LT Christopher Jeter, JAGC, USN**, of Counsel, Office of Judge Advocate General, Washington, D.C.


**MEMORANDUM OPINION AND FINAL ORDER**

**BRADEN,** *Judge*.

I.   **RELEVANT FACTS.[1]**

A.   **The Navy Commander's 2009 Investigation Of Plaintiff's Alleged Misconduct.**

Christopher Caldbeck ("Plaintiff") was commissioned as an Ensign in the United States Naval Reserve on December 21, 1991.  Compl. ¶ IV.  On November 22, 1993, Plaintiff was designated as a Surface Warfare Officer.  AR at 354.  Thereafter, Plaintiff received: positive fitness reports during his service (AR at 274-333); several certifications and qualifications (AR at 354-396); and other awards and commendations (AR at 335-52).

On October 4, 2008, Plaintiff reported to Navy Recruiting District, Houston ("NRD Houston") to work as the Executive Officer ("XO").  Compl. ¶ XVII.

In July 2009, the Commander of the Navy's Recruiting Region West ("the Commander") received an anonymous complaint alleging that Plaintiff engaged in conduct creating a "hostile work environment," and used "abusive and racial language."  AR at 191, 199.  In response, the Commander instituted an investigation of an alleged interaction between Plaintiff and Yeoman Chief Petty Officer Faith Floyd ("YNC Floyd"), an African-American woman with 11 children.  AR at 209-10.  Allegedly, Plaintiff called YNC Floyd into his office, while watching "a news story about a troop of baboons ripping open a car top carrier."  AR at 181, 209.  Allegedly, Plaintiff then remarked, "[H]ey YNC [Floyd,] I found your kids."  AR at 200.  Plaintiff contends that he did not intend any racial connotations by this remark.  AR at 200.  Plaintiff explained that "[t]he intent of [his] comments was to make lite [sic] of parenthood and how messy and chaotic kids can be."  AR at 200; *see also* AR at 181.  But, allegedly, YNC Floyd left Plaintiff's office "visibly shaken and angry" by his comment and notified the Commander.  AR at 182.  Subsequently, Plaintiff contended that he tried to apologize, but YNC Floyd "refused the apology."  AR at 181.

Subsequently, the Commander was asked to investigate a different allegation, *i.e.*, that Plaintiff made disparaging comments about Filipinos to Yeoman Chief Petty Officer Jesus Almaguer ("YNC Almaguer").  AR at 199.  YNC Almaguer's wife is a Filipino.  AR at 183.  YNC Almaguer claimed that, because a Navy Criminal Investigative Service ("NCIS") agent informed Plaintiff of Basic Allowance for Housing ("BAH") fraud "associated with the Philippines," he "ordered [YNC Almaguer] to look into another [s]ailor['s] BAH status,"

---

[1] The relevant facts were derived from the July 26, 2011 Complaint ("Compl.") and the December 21, 2011 Administrative Record ("AR at 1-429").

because that sailor was married to a Filipino woman, gratuitously stating, "[W]e know what these Filipino women are looking for[.]"  AR at 182-83.  Plaintiff denies that he made this statement, but an Acting Commander corroborated YNC Almaguer's account.  AR at 183.  Subsequently, however, the Commander was not able to find a corroborating witness who could confirm or refute this allegation.  AR at 187.

In addition, the Commander was asked to investigate an allegation that Plaintiff used a racial slur to denigrate Dr. Innocent Duru.  AR at 199.  After helping Dr. Duru move to a new office, Plaintiff allegedly responded to Dr. Duru's expression of gratitude by stating, "it is better than most n[******] would thank me for."  AR at 183.  Plaintiff denies that this alleged interaction even occurred and claims that it "is a malicious attack on him[.]"  AR at 183.[2]

Other allegations critical of Plaintiff's management style and his conduct that allegedly created a hostile work environment followed.  For example, Lieutenant Brenna Montgomery ("LT Montgomery") alleges Plaintiff called her a "SWO b[****,]" referring to her gender and career path (Surface Warfare Officer) in a negative way.  AR at 184.  Plaintiff denied this allegation, but admitted to calling LT Montgomery a "Baby SWO."  AR at 184.  Subsequently, the Commander substantiated that Plaintiff used both terms.  AR at 187.

In addition, LT Montgomery presented several allegations of Plaintiff creating a hostile working environment at NRD Houston, including extended work hours, speaking in a derogatory manner, "berating during closed door sessions," and other specific behaviors.  AR at 184.  She also reported that "several times a week field recruiters call her office and ask when [Plaintiff] will become Commanding [O]fficer . . . because they are trying to . . . leave the command prior to or just after [Plaintiff] takes over."  AR at 184.  During this time, the Acting Commander Master Chief also reported that Plaintiff exhibited "questionable leadership practices" and is "very intimidating and not easily approachable."  AR at 184.  The Commander also found that Plaintiff's "methodology did indeed create a hostile work environment where individuals felt berated, abused and intimidated."  AR at 187.  This finding was corroborated by the "Organizational Climate Survey Report for NRD Houston" and the "Command Assessment Climate Survey of 12-19 January 2009," that observed "the report hints to a fear of reprisal."  AR at 188, 246-67.

On August 20, 2009, the Commander's investigation concluded that, even though Plaintiff had appropriate command training regarding the Navy's equal opportunity policy, Plaintiff was "not cognitively aware of the racial implication of his comments."  AR at 188.  The investigation "concluded [that] the allegation that [Plaintiff] created a hostile work environment is [s]ubstantiated."  AR at 188 (emphasis omitted).  Although there was no recommendation that Plaintiff be "held accountable through either the judicial or non-judicial system," the investigation recommended that "appropriate administrative action to hold [Plaintiff] accountable" be taken and that "detachment . . . may be warranted."  AR at 188.

---

[2] Importantly, the Commander was unable to find any "witnesses who had first[-]hand knowledge to corroborate either [Plaintiff's] or Dr. Duru's statements[.]"  AR at 187.

### B. The Board Of Inquiry Proceedings.

On September 11, 2009, the Commanding Officer of NRD Houston requested that Plaintiff "be detached for cause as Executive Officer by reason of loss of confidence in [Plaintiff's] ability to command," since the Commander's investigation substantiated allegations that Plaintiff's "actions and statements created a hostile work environment and included the use of abusive and racial language." AR at 428 (Administrative Separation order, Enclosure (1)).

On February 22, 2010, the Commander of Navy Personnel Command sent a letter to inform Plaintiff that he was required to "show cause for retention in naval service," based on the "misconduct as alleged[.]" AR at 411 (the "Show Cause Letter"). The Show Cause Letter contained two allegations. AR at 411. First, Plaintiff was cited with "[m]isconduct," due to the "[c]omission of a military or civilian offense, which . . . under the Uniform Code of Military Justice (UCMJ), could be punished by confinement of six months or more[.]" AR at 411. This citation related specifically to misconduct substantiated in the Commander's August 14, 2009 Report. AR at 411. Second, Plaintiff was cited with, and would be required to explain, his "[s]ubstandard performance of duty," *i.e.*, his "[f]ailure to conform to prescribed standards of military deportment." AR at 411. Plaintiff also was notified that a Board of Inquiry ("BOI") would be convened to consider his case. AR at 411. On March 4, 2010, Plaintiff signed an "Acknowledgment of Rights" indicating that he received the February 22, 2010 Show Cause Letter and requested a BOI review, instead of tendering his resignation. AR at 415-16.

On April 8, 2010, a Judge Advocate General was assigned to defend Plaintiff. AR at 421. In advance of the BOI hearing, several letters were sent to the BOI from Navy officers in support of Plaintiff. AR at 404-08. In preparation for the BOI proceeding, Plaintiff attempted to obtain a 2.45 gigabyte file containing all the data from his Navy email account. AR at 397-400. Plaintiff was informed that to obtain emails from his file, he would need to inform the Navy of the "[a]pproxima[te] date of the email, the sender and subject matter," because Plaintiff could only receive "specific emails that . . . have been reviewed[.]" AR at 397. The Administrative Record does not contain any evidence that Plaintiff complied with this request.

On May 6, 2010, the BOI convened at NRD Houston. AR at 428-29.[3] The BOI's Presiding Officer was Naval Reserve Captain Richard Wakeland (designator 1125). AR at 103. The other members of the BOI were Captain Richard Verbeke (designator 6400) and Naval Reserve Captain Stephen Wickerson (designator 1115). AR at 103. Plaintiff was represented by both military and civilian counsel. AR at 104. The BOI record reflects that Plaintiff acknowledged that he was represented by counsel and was informed of his rights. AR at 28-33. During these proceedings, the BOI advised Plaintiff that the allegations to be considered regarding misconduct included: "(1) Violation of the UCMJ, Article 92, Failure to obey a lawful order; (2) Violation of the UCMJ, Article 133, Conduct unbecoming an officer and a gentleman; (3) Violation of the UCMJ, Article 117, Provoking speeches or gestures; and (4) Violation of the

---

[3] At the time of the BOI's review, Plaintiff was "an unrestricted line officer (surface warfare) with 18 years, 6 months commissioned and active duty service . . . [who] was commissioned via Naval Reserve Officer Training Corps." AR at 428. Plaintiff's designator (a number indicating a Naval Officer's competitive category) was 1117. AR at 428.

UCMJ, Article 93, Cruelty and maltreatment[.]" AR at 29. In addition, Plaintiff was advised by the BOI that he was being considered for separation from the Navy, because of: "[s]ubstandard performance of duty[:] (1) Failure to conform to prescribed standards of military deportment." AR at 29.

Plaintiff's civilian counsel advised the BOI that Plaintiff requested his "Detachment For Cause" file and "email traffic" but that the Navy had failed to provide it. AR at 30. In turn, Plaintiff's counsel objected, because his client was "denied his right to full discovery." AR at 30. The BOI responded that it intended to proceed but "want[ed] the command to produce the records," and ordered Plaintiff's civilian counsel to "outline specific written reasons why the records are requested[.]" AR at 30.

Plaintiff acknowledged that he had the rights: to obtain "[f]ull access to and copies of records relevant to the case except such information that . . . should be withheld in the interest of national security" (AR at 31); to challenge "any voting member of the [BOI] for cause" (AR at 31); and to "submit a statement in rebuttal to the [BOI's] findings and recommendations" (AR at 33). Plaintiff also indicated that he understood that "[f]ailure to invoke any of these rights shall not be considered a bar to the [BOI] proceedings, findings or recommendations." AR at 33. Plaintiff's civilian counsel questioned the BOI on "matter[s] that may constitute grounds for challenge for cause [of a BOI member,]" but stated that Plaintiff did not have any "challenge for cause against any voting member of [the BOI.]" AR at 33-34.

The BOI considered the statements of YNC Almaguer, the Acting Commander Master Chief, and Dr. Duru, as Navy exhibits. AR at 34. In addition, the BOI considered Plaintiff's: fitness reports; awards; qualifications; and letters of support from other Navy officers. AR at 35. In addition, the following witnesses were examined by the Navy's counsel, counsel for Plaintiff, and counsel for the BOI: Dr. Duru (AR at 35-46) (testimony concerning allegations of racism and contents of Dr. Duru's notebook, that Plaintiff claimed was altered after the fact); YNC Floyd (AR at 46-51) (testifying about Plaintiff's remarks regarding her children); LT Montgomery (AR at 51-64) (testifying about remarks Plaintiff made to her, as well as the incident involving YNC Floyd); Capt. Kreutz (AR at 64-69) (Plaintiff's former supervisor); Patrick A. Walker (AR at 69-71) (testifying on behalf of the Navy); CMC Hill (AR at 71-73) (a former colleague of Plaintiff testifying on his behalf); LT Dennis L. Holmes, Jr. (AR at 73-75) (same); Anthony Baiamonte (AR at 98-100) (testifying that he was instructed by "JAG" on specific protocols that had to be met before he could produce Plaintiff's email file); and Plaintiff (AR at 76-97).

Plaintiff denied the allegations in the testimony of Dr. Duru, LT Montgomery, and YNC Almaguer, and allegations that Plaintiff created a hostile work environment. AR at 76-97. Plaintiff admitted that he made the alleged statement to YNC Floyd, but explained that he did not intend any negative racial connotations. AR at 76-77, 87-88.

On May 6, 2010, the BOI unanimously found Plaintiff to be guilty of violating UCMJ, Article 92 (failure to obey an order or regulation) and Article 133 (conduct unbecoming an officer and gentleman). AR at 100-01. The BOI also found that Plaintiff did not violate UCMJ Article 117 (provoking speech or gestures) or Article 93 (cruelty and maltreatment). AR at 101.

But, the BOI found that Plaintiff failed to conform to prescribed standards of military deportment. AR at 101. Accordingly, the BOI recommended that Plaintiff be separated from the Navy with the "characterization of service to be General Under Honorable Conditions." AR at 101-02. On August 9, 2010, the BOI forwarded this recommendation to the Commander of the Navy Personnel Command. AR at 9-10.

Plaintiff did not appeal the BOI's recommendation to the Board of Corrections for Naval Records ("BCNR"). Compl. ¶ CXII.

### C.    Letter Of Deficiency And Separation.

On July 7, 2010, Plaintiff's civilian counsel sent a "Letter of Deficiency" to the Chief of Naval Personnel contending that the BOI was improperly composed, because no member was from the same competitive category as Plaintiff (an "FTS Surface Warfare Officer Commander"). AR at 1-2. Plaintiff's counsel also objected to the BOI proceedings because the inability to access Plaintiff's email file prevented counsel from obtaining relevant records, access to which was required by Navy regulations. AR at 2-3. Consequently, the record before the BOI was insufficient to support the BOI's recommendation that Plaintiff be separated from the Navy. AR at 3-5. Finally, Plaintiff's counsel objected to the actions of Captain Verbeke, citing his failure to act neutrally as a fact-finder on the BOI, instead of "as a 'prosecutor." AR at 5. In support, Plaintiff attached a polygraph test conducted by a former FBI agent, corroborating Plaintiff's testimony, as well as an affidavit of Command Master Chief (SW) Loretta J. Burchett, indicating that she witnessed Dr. Duru appearing to alter the notebook he referenced to corroborate his testimony. AR at 22-27.

On September 24, 2010, Plaintiff's "separation with an under Honorable conditions (General) discharge" was approved by the Assistant Secretary of the Navy (Manpower and Reserve Affairs) ("ASN (M&RA)"). AR at 429 (administrative separation order). On November 30, 2010, Plaintiff was separated from the Navy. Compl. ¶ CII; AR at 428-29. At that time, he had served "18 years, 6 months commissioned and active duty service." AR at 428.[4]

## II.    PROCEDURAL HISTORY.

On July 26, 2011, Plaintiff filed a Complaint in the United States Court of Federal Claims alleging that he was improperly separated from the Navy. The Complaint also alleges that: the BOI improperly was composed, because no member was from the same "competitive category" as Plaintiff (Compl. ¶¶ LVIII-LIX); Plaintiff improperly was denied access to relevant documents (Compl. ¶ LX); a notebook admitted into evidence was not provided to Plaintiff prior to the BOI review and was "fabricated or altered" (Compl. ¶¶ LXII-LXIII); the "show cause" letter did not sufficiently specify the allegations (Compl. ¶¶ LXV, LXXVI); several regulations implemented by the BOI were void (Compl. ¶¶ LXXII, LXXVII, LXXXIV, XCII, XCV); Plaintiff's "Letter of Deficiency" was not submitted to the Secretary of the Navy ("Secretary") as required by Navy regulations (Compl. ¶ CI); the Secretary erred in refusing to reconsider the

---

[4] The July 26, 2011 Complaint characterizes Plaintiff's term of service as "17 years 9 months and 9 days of active service and 1 year 3 months and 1 day inactive service." Compl. ¶ CII.

BOI's decision (Compl. ¶ CVI); a subsequent investigation by an NCIS Special Agent corroborated Plaintiff's testimony, challenging the validity of the Commander's 2009 investigation (Compl. ¶ CIII); and Plaintiff was deprived of his property interest without due process (Compl. ¶ CX). The Complaint requests that the court grant Plaintiff pay and allowances from his grade retroactive to his separation date and removal of all "references to the [BOI] or detachment for cause from his service record[,]" and restore him to active duty in his grade. Compl. at 21. In the alternative, the Complaint requests that Plaintiff be retired and awarded all retirement pay retroactive to his retirement eligibility date. Compl. at 21. In addition, Plaintiff requests that the court award costs and attorney's fees, "pursuant to the Equal Access to Justice Act." Compl. at 21.

On December 21, 2011, the Government filed the Administrative Record and a Motion To Dismiss, And In The Alternative, Motion For Judgment Upon The Administrative Record ("Gov't Mot."). The Government's motion was accompanied by an Appendix ("Gov't App."). The Government argues that Plaintiff's allegations are not justiciable and, thus, should be dismissed. Gov't Mot. at 12-14. In the alternative, the Government argues that judgment on the Administrative Record should be entered in favor of the Government because the Plaintiff failed to satisfy his burden to demonstrate error by the BOI or the Secretary of the Navy. Gov't Mot. at 32.

On March 3, 2012, Plaintiff filed a Motion To Strike The Affidavit Of Commander Jack Barnhill ("Pl. MTS") from the Administrative Record, supported by the Affidavit of John B. Wells. On March 5, 2012, Plaintiff filed an Opposition To Defendant's Motion For Judgment On The Administrative Record And Cross-Motion For Judgment On The Administrative Record ("Pl. Mot."), including two exhibits ("Pl. Mot. Ex. A-B").

On April 5, 2012, the Government filed an Opposition To Plaintiff's [March 3, 2012] Motion To Strike The Affidavit Of Commander Jack Barnhill, And Defendant's Motion To Strike Affidavit Of John B. Wells ("Gov't MTS Op."). On April 18, 2012, Plaintiff filed a Reply To Defendant's Opposition To Plaintiff's Motion To Strike The Affidavit Of Commander Jack Barnhill And Opposition To Defendant's Cross-Motion To Strike The Affidavit Of John B. Wells.

On May 31, 2012, the Government filed a Reply To Plaintiff's [April 18, 2012] Opposition To Defendant's Motion To Strike The Affidavit Of John B. Wells.

On June 29, 2012, the Government filed a Reply in support of its December 21, 2011 Motion and in opposition to Plaintiff's Cross-Motion For Judgment on the Administrative Record ("Gov't Reply"), which also included an Appendix ("Gov't Reply App.").

On August 13, 2012, Plaintiff filed a Reply to the Government's June 29, 2012 Reply ("Pl. Reply").

### III.     DISCUSSION.

#### A.     Jurisdiction.

The Tucker Act conveys "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2000). The Tucker Act, however, is only a "jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States* v. *Testan,* 424 U.S. 392, 398 (1976). Therefore, in order to pursue a substantive right, plaintiff "must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." *James* v. *Caldera,* 159 F.3d 573, 580 (Fed. Cir. 1998).

The Military Pay Act provides that "a member of the uniform service who is on active duty . . . [is] entitled to the basic pay of the pay grade to which assigned." 37 U.S.C. § 204 (2000). If it is determined that separation from the military was improper, entitlement to any pay due provides a money-mandating predicate for invocation of the Tucker Act. *See Holley* v. *United States,* 124 F.3d 1462, 1465 (Fed. Cir. 1997) ("It is well established that 37 U.S.C. § 204 . . . serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge.").

In this case, the court has jurisdiction to adjudicate the claims alleged in the July 26, 2011 Complaint, as it properly invoked the Tucker Act, *i.e.,* the "specific statute [that] sets the court's jurisdictional parameters," and the Military Pay Act, *i.e.,* "a separate statute [that] establishes the right that allegedly has been breached." *See Fisher* v. *United States,* 402 F.3d 1167, 1172 (Fed. Cir. 2005); *see also Voge* v. *United States,* 844 F.2d 776, 781 (Fed. Cir. 1988) (quoting *Silbert* v. *United States,* 566 F.2d 1190 (1977)) ("[S]ection 1491(a) gives the Claims Court power to order the correction of military records only 'incident of and collateral to' its award of a money judgment.").

The fact that Plaintiff decided not to exhaust the available administrative remedies by appealing to the BCNR does not affect the court's jurisdiction. *See Martinez* v. *United States,* 333 F.3d 1295, 1304 (Fed. Cir. 2003) ("[T]he failure to seek relief from a correction board . . . does not prevent the plaintiff from suing immediately[.]"); *see also Richey* v. *United States,* 322 F.3d 1317, 1323 (Fed. Cir. 2003) ("An officer seeking correction of military records may either apply as an initial matter to a Corrections Board, or file suit under the Tucker Act in the [United States] Court of Federal Claims.").

#### B.     Standard For Review On Motion To Dismiss Under RCFC 12(b)(6).

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . . is raised by a [Rule] 12(b)(6) motion[.]" *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by

motion: . . . (6) failure to state a claim upon which relief can be granted[.]"). When considering whether to dismiss an action for failure to state a claim, the court must assess whether the complaint states "allegations plausibly suggesting (not merely consistent with)" behavior by defendant that, if proven, would entitle the plaintiff to judicial relief. *See Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 557 (2007). The factual allegations must be substantial enough "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* at 555 (internal citations omitted).

### C.      Justiciability Issues Raised by the Government's Motion To Dismiss.

The Government argues that the July 26, 2011 Complaint does not state a justiciable claim and "boils down to [Plaintiff's] contention that the military should not have convened a BOI, and that there was insufficient evidence before the BOI to conclude that he committed misconduct." Gov't Mot. at 10 (citing Compl. ¶¶ LXVII-LXXI, LXXXI-LXXXII). In addition, the Complaint "does not cite to any 'procedures' that the Navy failed to follow when it determined that his conduct was improper and that he should be separated." Gov't Mot. at 13. Further, "[t]he mere fact that [Plaintiff] disagrees with the findings of the BOI or the weight it afforded to the evidence presented should not be enough for [the c]ourt to delve into the underlying substantive actions supporting his separation." Gov't Mot. at 14. In sum, the Secretary's decision to separate Plaintiff "could [not] be more military in nature and less appropriate for judicial review." Gov't Mot. at 11.

Plaintiff responds that the Complaint alleges justiciable claims, because "[i]n the instant case, there are identifiable and measurable tests and standards[,]" "the military acted arbitrarily and capriciously[,]" "the Navy's decision was contrary to the Constitution, laws[,] and regulations of the United States," and "the findings of the [BOI] were not supported by substantial evidence in the record." Pl. Mot. at 18. Moreover, it is well established that military decisions are "subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." Pl. Mot. at 18 (citing *Chappell* v. *Wallace*, 462 U.S. 296, 303 (1983)). Since the Complaint alleges the BOI's decision was arbitrary, capricious, or not based on substantial evidence, and that the Navy failed to follow "measured tests and standards," this case is justiciable. Pl. Mot. at 18. Plaintiff adds that although "decisions which affect the conduct of military operations, strategy or tactics" are not justiciable, "personnel decisions" are reviewable by the courts. Pl. Mot. at 20-21 (citing *Adair* v. *England*, 183 F. Supp. 2d 31, 50 (D.D.C. 2002) (holding that the military's policies to "hire, retain, and promote chaplains . . . relate to quality-of-life issues for military personnel and have no specific operational, strategic, or tactical objective" and therefore require less deference)).

The Government replies that the suggestion that BOI's factual findings were misguided "amount[s] to a request of the [c]ourt to substitute its judgment for that of the Secretary." Gov't Reply at 8. This is improper because judicial review is limited to "'tests and standards' against which the court can measure [the Secretary's] conduct." *Murphy* v. *United States*, 993 F.2d 871, 873 (Fed. Cir. 1993). Since there is no standard by which the court can measure the Secretary's actions, the court should reject Plaintiff's challenge of the Navy's determination that he be separated from service. Gov't Reply at 8-9.

The United States Court of Appeals for the Federal Circuit repeatedly has emphasized that the duty of the court, in cases concerning military personnel and benefits, is to be mindful of the import of the doctrine of justiciability, *i.e.,* whether the dispute is one within the competency of the court. *See Fisher,* 402 F.3d at 1176 ("Justiciability has both constitutional and prudential dimensions[.] . . . Though justiciability has no precise definition or scope, doctrines of standing, mootness, ripeness, and political question are within its ambit. . . . One aspect of justiciability relates to the issue of whether deference in a given case should be given by the judiciary to the particular authority and competence of another branch of government[.] . . . [Justiciability also] can arise under basic separation of powers concepts or because Congress has dictated that such deference be given.") (citations omitted) (footnote omitted).

This deference, however, does not extend to "ignoring basic due process considerations[.] When there is a question of whether reasonable process has been followed, and whether the decision maker has complied with established procedures, courts will intervene, though only to ensure that the decision is made in the proper manner." *Fisher,* 402 F.3d at 1177; *see also Adkins* v. *United States,* 68 F.3d 1317, 1323 (Fed. Cir. 1995). The United States Court of Appeals for the Federal Circuit, however, has held that, "although the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy." *Sargisson* v. *United States*, 913 F.2d 918, 921 (Fed. Cir. 1990) (stating that "[o]nce the Secretary promulgated regulations and instructions and made them the basis for [an Air Force Reserve Officer]'s release, his action became subject to judicial review for compliance with those regulations and instructions, even though he was not required to issue them at all[.]"). Whether an issue is justiciable "depends on 'whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded.'" *Murphy*, 993 F.2d at 872-73 (citing *Baker* v. *Carr,* 369 U.S. 186, 198 (1962)). When a complaint alleges "procedural violations . . . , the test or standards against which this court measures the military's conduct . . . are the applicable statutes and regulations." *Adkins*, 68 F.3d at 1323 (citing *Murphy*, 993 F.2d at 873 (In such cases, the court "appl[ies] the facts to the statutory or regulatory standard.")). The court "must determine whether [the Plaintiff] has challenged the procedural aspects . . . based on the alleged violation . . . of a statutory or regulatory standard." *Id.*

Insofar as the July 26, 2011 Complaint requests the court to review the merits of the BOI's decision, those claims are non-justiciable. *See, e.g.,* Compl. ¶¶ LXIV, LXXIV.

The July 26, 2011 Complaint, however, alleges that the BOI committed various procedural errors:

- the BOI was improperly composed, because none of the officers were in his competitive category, in violation of Secretary of the Navy Instruction ("SECNAVINST") 1920.6C (Compl. ¶¶ LVIII-LIX)

- a biased member of the BOI prevented a full and impartial hearing, which violated DOD Instruction 1332.30 (Compl. ¶ LXI)

- the Show Cause Letter did not specifically state the violations Plaintiff was alleged to have committed (Compl. ¶¶ LXV, LXXVI, LXXXI)

- Dr. Duru's notebook, which was "admitted into evidence[,]" was not provided to Plaintiff before the BOI was convened (Compl. ¶ LXII)

- Plaintiff was "denied access to relevant documents," in violation of SECNAVINST 1920.6C (Compl. ¶ LX)

- Office of the Chief of Naval Operations Instruction ("OPNAVINST") 5354.1F, Article 133 of the UCMJ, and the "failure to conform with standards of military deportment" provision of SECNAVINST 1920.6C as separation justifications are "unconstitutionally void for vagueness" (Compl. ¶¶ LXXII, LXXVII, LXXXIV)

- portions of SECNAVINST 1920.6C are *ultra vires* (Compl. ¶ XCII, XCV)

- Plaintiff's "Letter of Deficiency" was not submitted to the Secretary, as required by SECNAVINST 1920.6C (Compl. ¶ CI)

- Plaintiff was deprived "of his liberty and property interest without due process of law" (Compl. ¶ CX) and

- the Secretary's approval of the BOI's findings was contrary to law (Compl. ¶ CVI).

In addition, the July 26, 2011 Complaint alleges that the actions of the BOI and the Secretary were "arbitrary and capricious, unsupported by substantial evidence and contrary to the Constitution, laws and regulations of the United States." Compl. ¶¶ XCVI, CVI.

Since Plaintiff's procedural errors claims are justiciable, the Government's December 21, 2011 Motion To Dismiss is denied as to these claims. The merits of Plaintiff's Complaint are discussed below.

**D.    Standard For Review On Motion For Judgment On The Administrative Record, Pursuant To RCFC 52.1.**

A motion for judgment on the administrative record, pursuant to RCFC 52.1, is akin to an expedited trial on the record and has no counterpart in the Federal Rules of Civil Procedure. *See* RCFC 52.1, Rules Committee Note (July 13, 2009); *see also Bannum, Inc.* v. *United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) ("[T]he judgment on an administrative record is properly understood as intending to provide for an expedited trial on the record."). Accordingly, on a motion for judgment on the administrative record, the court is required to determine whether the plaintiff has met the burden of proof to show that the relevant federal agency decision did not have a rational basis or was contrary to law. *Id*. at 1348 (instructing the trial court to make "factual findings under RCFC [52.1] from the [limited] record evidence as if it were conducting a trial on the record"); *see also Afghan Am. Army Servs. Corp.* v. *United States*, 90 Fed. Cl. 341, 355 (2009) ("In reviewing cross-motions for judgment on the administrative record, the court must determine 'whether, given all the disputed and undisputed facts, a party has met its burden

11

of proof based on the evidence in the record.'" (citations omitted)).  The existence of a material issue of fact, however, does not prohibit the court from granting a motion for judgment on the administrative record, nor is the court required to conduct an evidentiary proceeding.  *See Bannum*, 404 F.3d at 1353-54 ("RCFC [52.1] requires the [United States] Court of Federal Claims, when making a prejudice analysis in the first instance, to make factual findings from the record evidence as if it were conducting a trial on the record.").

It is well established that the court's "review of [an] administrative decision is limited to determining whether the [agency] action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, *or contrary to law, regulation, or mandatory published procedure* of a substantive nature by which plaintiff has been seriously prejudiced."  *Clayton* v. *United States,* 225 Ct. Cl. 593, 593 (1980) (emphasis added).  In disputes concerning military decisions, the plaintiff must "overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith."  *Doe* v. *United States,* 132 F.3d 1430, 1434 (Fed. Cir. 1997) (quoting *Sanders* v. *United States,* 594 F.2d 804, 813 (Cl. Ct. 1979)).  This presumption, however, is not insurmountable.  *See Doe,* 132 F.3d at 1437 (holding that the plaintiff overcame the arbitrary and capricious standard in a military discharge case, where the relevant administrative board considered hearsay evidence without allowing the plaintiff rebuttal); *see also Conn* v. *United States,* 376 F.2d 878, 882 (Ct. Cl. 1967) (invalidating military decision to discharge, in part because of the military's failure to follow published procedures.); *Murphy*, 993 F.2d at 873 ("When the military is given unlimited discretion by Congress, [in personnel matters] it is nevertheless bound to follow its own procedural regulations if it chooses to implement some.").

## E.  Issues Raised By The Parties' Motions For Judgment On The Administrative Record.

### 1.  Whether The Composition Of The Board Of Inquiry Was Unlawful.

#### a.  The Government's Argument.

The Government argues that the BOI properly was composed.  Gov't Mot. at 16.  The BOI must contain at least three officers from the same "Armed Force" and "at least one member from the same competitive category[.]"  SECNAVINST 1920.6C, Encl. (8), § 4.c.; AR at 157-71.  If an officer is a Reserve officer, as Plaintiff was, "at least one member [of the BOI] must be a Reserve officer."  SECNAVINST 1920.6C, Encl. (8), § 4.b.; AR at 158.  Although this requirement can be waived by the convening authority, it "is especially important when considering an officer for substandard performance."  SECNAVINST 1920.6C, Encl. (8), § 4.c.; AR at 158.

Plaintiff's status as a Full Time Support ("FTS") Reserve officer does not distinguish him from a regular reservist for the purpose of determining his competitive category.  Gov't Mot. at 17 (citing Gov't App. at 68-72, 73-76; Military Personnel Manual ("MILPERSMAN") 1001-020, 1301-221 (noting that the FTS category was created "in order to have Reserve officers on active duty '. . . to perform duties in connection with organizing, administering, recruiting, instructing, or training Reserve components[.]'") (emphasis omitted) (citation omitted)).

The term "competitive category" is referenced in SECNAVINST 1400.1B, in a manner that implies that competitive categories are used mainly for promotions consideration and career development. Gov't Mot. at 17-18; Gov't App. at 77. If Plaintiff were being considered for a promotion, he would be compared to other Reserve officers, but not necessarily other FTS officers. Gov't Mot. at 18 (citing Decl. of Commander Jack T. Barnhill, USN,[5] Gov't App. at 87-89 (stating that Plaintiff's "BOI was properly composed.")). Thus, Plaintiff's status as an FTS officer "has nothing to do with his competitive category, that of Reserve Line officer." Gov't Mot. at 18.

Plaintiff's BOI was comprised of three officers senior in rank to Plaintiff, including two reservists and two members from the Reserve Line officer competitive category. Gov't Mot. at 18. Thus, Plaintiff's "BOI was properly composed and did not violate the Navy regulations." Gov't Mot. at 19.

### b.    Plaintiff's Response.

Plaintiff responds that the composition of the BOI was not lawful, because it did not contain a member from the same competitive category as Plaintiff. Pl. Mot. at 22. The Government's position relies on SECNAVINST 1400.1B, which is not the proper competitive category list. Pl. Mot. at 22. SECNAVINST 1400.1B, titled "Officer Competitive Categories for the Active Duty List (ADL) of the Navy and Marine Corps," is applicable "only to officers on the Active Duty List (ADL)." Pl. Mot. at 22. Plaintiff was not on the ADL, but on the Reserve Active Status List ("RASL"). Pl. Mot. at 22.

The competitive category list relied on by the Government, SECNAVINST 1400.1B, was promulgated, pursuant to 10 U.S.C. § 620(a), that states:

> The Secretary of the military department concerned shall maintain a single list of
> all officers (other than officers described in section 641 of this title) who are on
> active duty for each armed force under his jurisdiction[.]

10 U.S.C. § 620(a).

"Reserve officers . . . on active duty under section . . . 10211," however, are exempt from the ADL. 10 U.S.C. § 641(1)(B). Section 10211 states:

> Within such numbers and in such grades and assignments as the Secretary
> concerned may prescribe, each armed force shall have officers of its reserve

---

[5] Plaintiff contends that this declaration was improperly included in the Administrative Record and should be struck. Pl. MTS. Because the court did not consider this declaration nor the affidavit of John B. Wells in its analysis, Plaintiff's March 3, 2012 Motion To Strike and the Government's April 5, 2012 Opposition To Plaintiff's Motion To Strike The Affidavit Of Commander Jack Barnhill, And Defendant's Motion To Strike Affidavit Of John B. Wells are moot.

components on active duty (other than for training) at . . . headquarters responsible for reserve affairs, to participate in preparing and administering the policies and regulations affecting those reserve components.

10 U.S.C. § 10211.

As a Reserve FTS officer on active duty, Plaintiff is governed by 10 U.S.C. § 10211 and, therefore, falls within the exception provided by section 641. Pl. Mot. at 23. Thus, Plaintiff should not be on the ADL, as he is subject to an exception in 10 U.S.C. § 620(a), and is not governed by SECNAVINST 1400.1B, contrary to the Government's assertion. Pl. Mot. at 22-23.

The RASL is authorized by 10 U.S.C. § 14002(a) that states in part:

The Secretary of each military department shall maintain a single list, to be known as the reserve active-status list, for each armed force under the Secretary's jurisdiction. That list should include the names of all reserve officers of that armed force who are in an active status other than those on an active-duty list described in section 620 of this title[.]

10 U.S.C. § 14002(a).

Plaintiff's status as a Reserve FTS officer on active duty, authorized under 10 U.S.C. § 10211 as a Reserve officer on active duty for the Navy, means that he should be listed on the RASL as a Reserve officer in an active status, not on the ADL. Pl. Mot. at 23-24. As such, Plaintiff's competitive category is governed by OPNAVINST 1427.1, ¶ 8(b), the "best relevant guidance for Reserve competitive categories." Pl. Mot. at 24. According to this regulation, "which separates FTS personnel from other Reserve Officers," Plaintiff's competitive category is that of an FTS Unrestricted Line Officer. Pl. Mot. at 24 (citing Gov't App. at 94, 96; OPNAVINST 1427.1, ¶ 8(b) (stating that FTS officers with "Designator 11X7" will compete for promotion in the "Unrestricted Line Officer (FTS)" competitive category)).

The BOI included: Captain Wakeland (designator 1125, a Reserve Submarine Officer); Captain Wilkerson (designator 1115, a Reserve Surface Warfare Officer); and Captain Verbeke (designator 6400, a Limited Duty Officer). AR at 103. None of these individuals, however, were in Plaintiff's competitive category, *i.e.*, 1117. Pl. Mot. at 25.[6]

Furthermore, the distinction between FTS officers and "inactive personnel" is an important one, because there are differences in knowledge and expertise, as well as "widespread

---

[6] Plaintiff also objects to the fact that the unrestricted line officers who comprised the BOI did not have command experience—as indicated by their designators—thereby violating SECNAVINST 1920.6C. Pl. Mot. at 26 (citing SECNAVINST 1920.6C, Encl. (8), ¶ 4(e) ("At least one member shall be an unrestricted line officer. Such officers should have command experience, whenever possible.")).

tension between the two communities." Pl. Mot. at 25-26.  As such, the BOI was improperly composed and Plaintiff was not properly separated from the Navy.  Pl. Mot. at 26-28.

### c.      The Government's Reply.

The Government contends that 1400.1B is the correct list because, although "that instruction does not address the matters of officer separations, it does provide a definition of competitive category that is helpful [in this case]."  Gov't Reply at 12.  In addition, the Government claims that "there is no difference between competitive categories for active duty and reserve officers."  Gov't Reply at 12.  To demonstrate this, the Government points to OPNAVINST 1427.1, ¶ 5(b), which states:

> A Navy Reserve officer serving on active duty in connection with the Full Time Support (FTS) of the Reserve Component who is assigned to a competitive category . . . is considered for the purposes of assigning a running mate to be in the same competitive category as the officer on the ADL List whose competitive category . . . most closely corresponds to the FTS Officer's competitive category.

Gov't App. at 91.

The Government further contends that Plaintiff erroneously relies on OPNAVINST 1427.1 because "[r]egulations dealing with promotions have no application to separations[.]"  Gov't Reply at 12.   In separation proceedings, unlike in promotion proceedings, "the Navy is not concerned about whether there is competition with similarly situated individuals."  Gov't Reply at 12.

Finally, there is no requirement in SECNAVINST 1920.6C that a member of the BOI has command experience and Plaintiff "fails to explain why it [was] necessary[.]"  Gov't Reply at 13.

### d.      Plaintiff's Reply.

Plaintiff replies that while the Government is correct that an agency's interpretation of its own regulations is entitled to a level of deference, the Government's choice of regulation is incorrect. Pl. Reply at 4.  The Government's reliance on SECNAVINST 1400.1B is erroneous, because it applies only to the ADL, a term of art different from "active duty," and is defined by 10 U.S.C. § 620. Pl. Reply at 5.  Plaintiff reasserts that the ADL does not include him, that he is in fact on the RASL, and that competitive categories for officers on the RASL are properly defined by SECNAVINST 1420.1B and OPNAVINST 1427.1, not SECNAVINST 1400.1B.  Pl. Reply at 5-6.  "Paragraph 3i of SECNAVINST 1420.1B incorporates the guidance of OPNAVINST 1427.1 in the establishment of precedence and competitive categories for officers on the RASL of the Navy and Marine Corps," and  "OPNAVINST 1427.1, ¶8a and ¶8b require a separate competitive category for [FTS] personnel" from other Unrestricted Line Officers.  Pl. Reply at 5.  Therefore, SECNAVINST 1400.1B is a "poor choice to define or even illustrate competitive categories for purposes of SECNAVINST 1920.6C."  Pl. Reply at 5.  "Interpretation

of the directive is not the issue[,] [the Government's] failure to select the correct directive is what is germane." Pl. Reply at 6.

### e.      The Court's Resolution.

Plaintiff and the Government agree that the BOI must contain at least one member in the same competitive category as Plaintiff. The parties disagree, however, as to the competitive category list that should be used to determine Plaintiff's competitive category, and therefore, whether the BOI properly was composed in this case. The Government contends that SECNAVINST 1400.1B is the appropriate directive. Plaintiff contends that OPNAVINST 1427.1 is the correct directive.

The Government contends that the BOI properly was composed using the competitive categories in SECNAVINST 1400.1B. That directive, titled "Officer Competitive Categories for the Active Duty List (ADL) of the Navy and Marine Corps," was intended "[t]o establish the officer competitive categories within the Navy and Marine Corps for officers on the active duty list (ADL)[.]" SECNAVINST 1400.1B, ¶ 1. That directive also provides that competitive categories are "to provide for separate promotion consideration and career development of groups of officers with related education, training, skills, and experience needed to meet mission objectives of the Navy . . . which make separate career management desirable." *Id*. at ¶ 3.

SECNAVINST 1400.1B, Enclosure (1) contains a list of competitive categories. The Government contends that the proper competitive category for Plaintiff is "Unrestricted Line Officer" under the specialty "Qualified in Surface Warfare[.]" SECNAVINST 1400.1B, Encl. (1). The listed designator is" "111X," with the "X" serving as a placeholder for another number. *Id*. The Government's contention is that, since Plaintiff's designator is 1117, Captain Wickerson (designator 1115) fulfills the "same competitive category" requirement.

On the other hand, the ADL, on which the Government's proposed directive relies, does not include Plaintiff. The ADL is created by 10 U.S.C. § 620, which specifically excludes reserve officers. *Compare* 10 U.S.C. § 620(a) ("The Secretary . . . shall maintain a list of all officers (other than officers described in section 641 of this title) who are on active duty[.]"), *with* 10 U.S.C. § 641(1)(B) (encompassing "[r]eserve officers . . . on active duty under section . . . 10211[.]"), 10 U.S.C. § 10211 (governing FTS officers), *and* OPNAVINST 1427.2, ¶ 5 (listing exceptions to the ADL, including reserve officers on active duty "under . . . section 10211"). Therefore, the Government's selected directive is irrelevant to the resolution of this issue.

The RASL is authorized by 10 U.S.C. § 14002, which is a list of "all reserve officers of that armed force who are in an active status other than those on an active-duty list described in section 620[.]" *See* 10 U.S.C. § 14002(a). Since Plaintiff is a reservist in active status and is specifically excluded from section 620, he is subject to the RASL.

OPNAVINST 1427.1, the directive on which Plaintiff relies, is titled "Regulations Governing Running Mates, Precedence, and Competitive Categories for Officers of the Navy Reserve." The directive is intended "[t]o prescribe regulations governing the assignment of

running mates and the establishment of precedence and competitive categories for officers on the Reserve Active Status List (RASL) of the Navy." OPNAVINST 1427.1, ¶ 1(b). OPNAVINST 1427.1 contains two lists of competitive categories: paragraph 8(a) governs Navy Reserve officers, "other than a FTS officer, who is not on the ADL," and paragraph 8(b) governs FTS officers. *See id*. at ¶ 8(a)-(b). Both lists specifically note that the competitive categories are to be used "for promotion." *Id*.

The relevant portion of paragraph 8(a) contains the following designators for the "Unrestricted Line Officer" competitive category: "11XX/13XX/19XX[.]" *Id*. at ¶ 8(a). The relevant portion of paragraph 8(b) contains the following designators for the "Unrestricted Line Officer (FTS)" competitive category: "11X7/13X7[.]" *Id*. at ¶ 8(b). Furthermore, the regulations state that "for purposes of assigning a running mate[,]" an FTS officer will be considered "to be in the same competitive category as the officer on the ADL . . . whose competitive category . . . most closely corresponds to the FTS officer's competitive category." *Id*. at ¶ 5(b)(1).

Plaintiff's designator is listed as 1117. AR at 428. The BOI was comprised with officers with the designators of 1125, 6400, and 1115. *Id*. at 103. Thus, the relevant designator to compare with Plaintiff's is Captain Wickerson's designator of 1115. Under both SECNAVINST 1400.1B (designator 111X) and OPNAVINST 1427.1 paragraph 8(a) (designator 11XX), Plaintiff and Captain Wickerson share a competitive category. Using OPNAVINST 1427.1 paragraph 8(b) (designator 11X7), however, Plaintiff and Captain Wickerson do not share a competitive category.

The difficulty lies in the fact that by their terms, all three of the competitive category regulations apply in the context of promotions. OPNAVINST 1427.1, ¶ 8(a) (defining "competitive categories for promotion"); OPNAVINST 1427.1, ¶ 8(b) (stating that FTS officers "compete for promotion in one of the following categories"); SECNAVINST 1400.1B ¶ 3 (defining "competitive categories to provide for separate promotion consideration and career development"). On one hand, the record contains no regulation, and the court is aware of none, that defines a separate list of competitive categories to be used in the context of separation proceedings by a board of inquiry. On the other, it is important to note that applicable Navy regulations, including SECNAVINST 1920.6C and SECNAVINST 1420.1B, without defining its meaning, use the term "competitive category" interchangeably in the context of promotion and separation, and do not otherwise indicate a difference in application or designation in the two contexts. *See, e.g.*, SECNAVINST 1920.6C, ¶ 7; SECNAVINST 1920.6C, Encl. 3, ¶ 2. In addition, the Navy Regulation governing administrative separations, SECNAVINST 1902.6C, emphasizes that the policies and procedures of separation in the regulation are intended to promote "maintain[ing] authorized strength in each competitive category and grade," and "ensur[ing] planned promotion and flow and reasonable career opportunities in each competitive category," implying a relationship between separation on the one hand, and promotion or retention on the other. SECNAVINST ¶ 7(a)(1)-(2). Because no similar connection exists between separation and the assignment of a running mate, the court has determined that SECNAVINST 1427.1 ¶ 5(b)(1) is inapposite. For these reasons, the court has determined that the proper directive to apply is OPNAVINST 1427.1 ¶ 8(b), the sole source of guidance on

determining competitive categories for FTS Officers on the RASL. As such, the BOI in this case contained no member in the same competitive category as Plaintiff.

If Plaintiff had appealed to the BCNR, that forum could have made a determination on whether the BOI was improperly composed. *See Wisotsky* v. *United States*, 69 Fed. Cl. 299, 302-03 (2006) (noting the BCNR's decision as to the improper constitution of the BOI in that case). According to Plaintiff's Letter of Deficiency to the Secretary of the Navy:

> Since the *Wisotsky* decision, the Board for Correction of Naval Records has consistently applied the [United States] Court of Federal Claims analysis to void BOI decisions and administrative separations for cause where the 'competitive category' provision of . . . SECNAVINST 1920.6C [was] violated and has set aside the BOI results in those cases that have come before the BCNR.

AR at 2 (citing *In re Camiola* (decided 31 May 2007) and *In re Griffin*, BCNR Dkt. Number 1866-06 (decided 7 June 2007)).[7]

In *Wisotsky*, the United States Court of Federal Claims agreed with a BCNR's determination that the BOI at issue in that case was improperly constituted. *See Wisotsky*, 69 Fed. Cl. at 306. The court, however, disagreed with the BCNR's use of harmless error review. *Id.* at 309. The court noted that "duty performance" was an integral part of the discharge proceeding and that a "service member in the same competitive category" could have assisted the BOI in understanding the particulars of the job, and "might or might not have affected the outcome of the discharge proceedings[.]" *Id.* The court concluded that "[t]he failure to include a Board member in Mr. Wisotsky's competitive category is a board composition error, the effect of which is not capable of evaluation. Due to the inability of the BCNR, this court or any other reviewing body to assess the magnitude of the error in this case, harmless error review is inappropriate and inapplicable." *Id.*

The United States Court of Appeals for the Federal Circuit discussed when harmless error review should be applied in assessing a procedural violation in *Wagner* v. *United States*, 365 F.3d 1358, 1363 (Fed. Cir. 2004). *Wagner* recognized that there are "two justifications for refusing to apply the harmless error rule: (1) avoiding the erosion of essential components of a fair trial; and (2) the inability of a reviewing body to assess the magnitude of the error." *Id.* at 1363 (citing *Doyle* v. *United States*, 599 F.2d 984, 995 (Ct. Cl. 1979)).

Improper Board composition, however, will not necessarily void the Board's judgment. *See Sargisson*, 913 F.2d 918. In *Sargisson*, an officer of the Air Force Reserve was separated by the Reserve Officer Screening Board. *Id.* at 920. The officer claimed that the Board did not include an appropriate number of reserves as required by regulation, because only one of fifty-two members was a Reserve officer. *Id.* The United States Court of Appeals for the Federal Circuit held that the officer was not prejudiced by having only one Reserve officer on the board. Since only Reserve officers were being considered, "there was no opportunity for discrimination." *Id.* at 923.

---

[7] The BCNR decisions cited above are not readily available.

The effect of the improper Board composition in *Sargisson* was capable of evaluation. First, the officer was released, pursuant to a requirement that the Air Force reduce its manpower. *Id.* at 921. Second, the issue of prejudice was not present, because only Reserve officers were being considered for separation. In this case, however, Plaintiff was separated for substandard performance, not because of a Navy-wide mandate for manpower reduction. Moreover, a BOI considering an officer for substandard performance specifically is mentioned in SECNAVINST 1920.6C as an "especially important" instance requiring that a BOI include at least one member in the same competitive category as the respondent. SECNAVINST 1920.6C, Encl. (8), ¶ 4c. Thus, prejudice may exist.

Applying the test set forth in *Wagner*, the first of the two justifications for not applying harmless error is met in this case. The fact that the BOI did not contain at least one member of the same competitive category as Plaintiff, and therefore, was not properly composed, indicates an absence of an essential component of a fair trial. The second requirement, however, presents a more difficult problem. Charges of racial abuse, as well as poor management and creating a hostile working environment, may be capable of being evaluated equally by any officer in the Navy who has managed personnel. Plaintiff's evaluation by the BOI, however, may have been skewed by his not being afforded a BOI member who was an FTS officer who could evaluate his performance in the terms of what Plaintiff's job requires. It is impossible to determine without speculation what an FTS officer would have considered relevant and whether that officer's knowledge and experience would have affected the characterization of Plaintiff's behavior and the outcome of the BOI proceedings. "Where the effect of an error on the outcome of a proceeding is unquantifiable," the court "will not speculate as to what the outcome might have been had the error not occurred." *Wagner*, 365 F.3d at 1365. Because it is impossible to evaluate what effect, if any, the Board's improper composition had on Plaintiff's BOI hearings, harmless error review is "inappropriate and inapplicable" in this case. *Wisotsky*, 69 Fed. Cl. at 309 (citing *Wagner*, 365 F.3d at 1362). For these reasons, the court has determined that the BOI was not properly composed, and that Plaintiff's separation from Navy was unlawful.

## IV.    CONCLUSION.

For the foregoing reasons, Plaintiff's March 5, 2012 Cross-Motion For Judgment On The Administrative Record is granted, and the Government's December 21, 2011 Motion For Judgment Upon The Administrative Record is denied. For the reasons discussed above, the Government's December 21, 2011 Motion To Dismiss is also denied, to the extent that the July 26, 2011 Complaint alleges procedural violations that occurred during Plaintiff's administrative separation process. The parties shall consult, determine appropriate relief due to Plaintiff, and file a joint stipulation reflecting the proposed relief on or before Monday, April 1, 2013.

**IT IS SO ORDERED.**

s/Susan G. Braden
**SUSAN G. BRADEN**
**Judge**

19